The Guardian Trust Co. et al. *v.* Kirby.

(Decided April 22, 1935.)

*Mr. John W. Bricker,* attorney general, *Mr. Charles F. Carr* and *Mr. Richard R. Hollington,* for appellants. *Messrs. Davies & Eshner,* for appellee.

Lemert, P. J. This cause comes into this court upon appeal from the Court of Common Pleas of Cuyahoga county. The cause is submitted to the court upon an agreed statement of facts, the same being too lengthy to incorporate in this opinion in full. Suffice it to say that the facts so far as material to the proper determination of the issues involved in this case are as follows:

On February 4, 1933, Levi DeForrest Vowles and his wife desiring to sell certain real estate, and Walter B. Kirby and wife desiring to purchase, entered into an escrow agreement with The Guardian Trust Company. The parties thereupon deposited with The Guardian Trust Company's escrow division an executed deed to the premises and a note and mortgage in the sum of $4,000, all as described in the agreement.

Thereafter, on February 15, 1933, appellee Kirby

deposited with the escrow division his Guardian Trust Company's savings account passbook No. 247123 showing a balance of $2,082.26, and a withdrawal receipt in the amount of $1,900 signed by him. The receipt of said passbook and withdrawal receipt was acknowledged by Mr. T. R. Roberts, in charge of the trust department's escrow division, who then ordered from The Guarantee Title and Trust Company a search of the title to the premises involved in the escrow. On February 20, 1933, a report was received by the escrow division showing that the title was subject to certain defects which would prevent the consummation of the escrow, of which fact the parties were notified. On February 24, 1933, the parties to the escrow met and agreed to consummate said agreement without regard to the title defects, and agreed to allow $300 of the purchase price to remain in escrow until the title could be quieted. The parties informed Mr. Roberts of their intention, and then went to the office of Messrs. Pennell & Johnson, attorneys, and instructed them to execute a supplemental letter of escrow instructions. The supplemental letter of instructions was delivered to The Guardian Trust Company at noon on Saturday, February 25, 1933, the exact time being uncertain.

The Guardian Trust Company, as was customary, closed its doors at noon on that date, and by reason thereof and the late delivery of the aforesaid instructions it was impossible for it to complete the terms of the escrow on February 25.

The Guardian Trust Company at no time delivered the deed or note and mortgage, nor did it use the withdrawal receipt. Furthermore, the savings account hereinabove referred to was at no time debited in the amount of $1,900; the escrow department was at no time credited with said amount; nor did appellee ever instruct it to withdraw or segregate $1,900. Interest was paid on the full balance in said account at the regular rate up to and including June 15, 1933.

Thereafter, on February 27, 1933, The Guardian Trust Company opened its doors on a restricted basis, in accordance with an order of the Cleveland Clearing House, which was consented to and approved by the directors of The Guardian Trust Company, limiting withdrawals to one per cent of its deposit liability.

On February 28, 1933, by virtue of Section 710-107a, General Code, the Superintendent of Banks ordered said trust company forthwith to suspend payment in any manner of liabilities of such bank to depositors and other creditors—except as to one per cent thereof.

The Guardian Trust Company continued to operate upon such restricted basis and under authority of said Section 710-107a until April 8, 1933, upon which date I. J. Fulton, superintendent of banks of the state of Ohio, in order to conserve the assets of said trust company for the benefit of the depositors and other creditors, appointed a conservator; and on that date said conservator took possession of the business and property of said trust company, under the supervision of the Superintendent of Banks and subject to the limitations imposed by the superintendent, as provided in Section 710-88a, General Code.

In the case at bar the appellee, Walter B. Kirby, had money on deposit with The Guardian Trust Company in a savings account many months prior to its being taken over for liquidation by the superintendent of banks. This savings account drew interest at the contract rate, and there can be no question that at the time the relationship between the parties was that of debtor and creditor, and one of the questions to be decided is whether that relationship continued to exist at the time of the contractual relations between the plaintiff and defendant hereinafter referred to.

The parties herein, as shown by the agreed statement of facts, entered into an escrow agreement that could not be completed for some time, with knowledge that it would be presumed that they intended that the

savings account balance should stand and draw interest—as it had always done—until the escrow agreement should be completed.

At the outset of this opinion we desire to say that the persons dealing with a bank normally expect the bank to make use of all funds received by it, from whatever source derived, and, in the absence of an agreement to the contrary, this custom and understanding become a part of the contract and authorize the use of the deposit by the bank. Unless there is some agreement to the contrary, deposits received by the bank become its property; they belong to it and can be loaned or otherwise disposed of by it as can any other money belonging to the bank.

The execution and delivery of a withdrawal slip not only substantiate the contention that the relationship between the parties was that of debtor and creditor, but definitely establish it by rebutting any presumption that the parties intended segregating any money. That the relationship of debtor and creditor existed between the parties until the time the agreement was entered into can not be questioned; and since no deduction was ever made from the account, and since the evidence disclosed no intention on the part of appellee that the bank was not to have the use of any funds deposited under this agreement, that relationship never changed.

This contention must be sustained in the case at bar for the further reason that if the court, by means of some fiction, finds that the amount in question is no longer subject to the deposit contract, but was covered by the escrow contract, then the latter controls. So we note as a part of the agreement between the parties herein, the following:

"The Guardian Trust Company is authorized to receive the escrowed funds, and pending the disbursement of such funds as herein directed, to use the same in the ordinary and usual course of its business."

Therefore, it will be noted that the contract between the parties specifically provided that the bank may use and commingle any moneys deposited thereunder, and under such agreement it follows that the relationship of debtor and creditor existed.

The only conceivable theory by which the court could find that there were any funds to which a trust relationship had attached would be on the theory that when the supplemental agreement was entered into a credit had shifted to the trust department from the savings account of appellee in the banking department. Such a shift of credit would not entitle appellee to a preference, as will hereinafter be explained.

We are of the opinion that the relationship between the parties at the time the contract was entered into continued, and that relationship was that of debtor and creditor. It is a well settled principle of law in this and other jurisdictions that if one person pays money to another it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor, or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created. The intention of the parties will be ascertained by a consideration of their words and conduct in the light of surrounding circumstances.

Among the circumstances which may be of importance in determining the intention of the parties are: The presence or absence of an agreement to pay interest on the money paid; the amount of money paid; the time which is to elapse before the payee is to be called upon to perform his agreement; the relative financial situation of the parties; the relations between

the parties; their respective callings; the usage or custom in such or similar transactions.

The rule in Ohio as established by the case of *McDonald, Admr.,* v. *Fulton, Supt. of Banks,* 125 Ohio St., 507, 182 N. E., 504, 83 A. L. R., 1107, provides as follows:

"1. The provisions of Section 710-165, General Code, authorize a bank organized under the laws of this state, with powers of a trust company, to make a general deposit of money received by it as trustee and held temporarily pending investment or distribution, in the commercial or other department of such bank, unless otherwise expressly provided by the trust agreement creating and controlling such trust.

"2. As to such funds the relation of the bank and trustee is as debtor and creditor, and funds thus deposited may be used by the bank in its general business as other assets.

"3. The rights of the trustee, with reference to the funds so deposited, are no greater than or different from those of other general depositors, and upon liquidation of the bank they all share proportionately in the distribution of the assets."

It will be noted that the only exception made to the right of the trustee to make a general deposit is in the event the trust agreement expressly prohibits such deposits. In the case at bar the trust agreement between the parties does not prohibit such deposit, but on the contrary specifically authorizes the trustee to use the funds, the only intendment of which can be that the trustee could deposit any funds coming into its possession as a general deposit.

It is contended by the appellee that the facts in the *McDonald case, supra,* are not controlling, but such contention cannot be sustained in view of the recent definition of the special deposit by the Supreme Court of Ohio in the case of *Busher, Clerk of Courts,* v. *Ful-*

*ton, Supt. of Banks,* 128 Ohio St., 485, 191 N. E., 752. Paragraph two of the syllabus reads:

"A 'special deposit' is a deposit for safe-keeping, to be returned intact upon demand. The relationship of bailor and bailee is created between the depositor and the bank. The title remains in the depositor, and the bank acquires no property rights in the deposit. When the deposit consists of money, the bank has no right to use such money in its business or mingle it with its general funds. Upon the insolvency of the bank, a trust is created in favor of such special depositor."

And as to the manner of creating a special deposit that is described in the third paragraph of the syllabus:

"To create a special deposit, the depositor and the bank at the time the deposit is made must intend and agree, expressly or by implication, that such deposit shall remain segregated and not be commingled with or made a part of the general funds of the bank, or be subject to its use and control in the usual and customary course of its banking business."

The admitted facts disclose that no fund or property of the appellee ever was segregated by The Guardian Trust Company. The agreement between the parties does not provide that any deposit shall remain or be segregated, and not commingled, but refutes such contention by expressly stating that the deposits may be used "in the ordinary and usual course of its business."

It is to be noted in the instant case that the agreement of these parties bears the date of February 15, 1933. We note that Section 710-165, General Code, was by the Legislature of Ohio amended, effective June 14, 1933, so that this action is to be governed and controlled by Section 710-165 as it existed prior to June 14, 1933. For a proper decision of the instant case we are of the opinion that the cases of *Fulton,*

*Supt. of Banks,* v. *Escanaba Paper Co.,* and *Fulton, Supt. of Banks,* v. *University of Dayton,* 129 Ohio St., 90, 193 N. E., 758, are applicable. The Supreme Court therein held:

"1. In order to assert successfully a claim for preference in the distribution of the assets of an insolvent bank, a depositor must establish legal or equitable title to the deposits he has made. If title to the funds deposited has passed to the bank he becomes a creditor and, as such, has no valid claim for preference.

"2. In determining whether title to funds deposited has passed to the depositary bank, regard must be had to the agreement under which the deposit is made, and to all the conditions and circumstances of the arrangement. The payment of interest on the deposit is a strong, though not conclusive, indication that title to the funds deposited has passed to the bank and that the relation between the bank and the depositor is that of debtor and creditor.

"3. Before a depositor's claim for preference in the distribution of the assets of an insolvent bank may be allowed, he must be able to trace the fund to which he asserts title into the bank's assets at the time of closing. It is not necessary, however, that he follow in specie particular dollars deposited nor that he show that his deposits were converted into specific quantities of cash.

"4. The provisions of Section 710-165, General Code, prior to the amendment effective June 14, 1933, authorized trust companies, in the absence of an express agreement to the contrary, to deposit trust moneys pending distribution or investment in any other department of the bank. As to such moneys, so deposited, the relation between the bank and the depositor was that of debtor and creditor."

The court in its opinion in the last mentioned cases quotes on page 99 from 5 Ohio Jurisprudence, 379, Section 86, as follows: "A special deposit is created

where the money is left for safekeeping, and the identical thing is to be returned to the depositor."

The Supreme Court further quotes from American Law Institute Restatement of the Law of Trusts, Tentative Draft No. 1, page 44, Section 15, Comment h, as follows: "If money is deposited in a bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

So that without further citations we are of the opinion that taking Section 710-165 as it stood prior to June 14, 1933, there can be no preference in the instant case, so that the finding and judgment of this court is for the appellants.

*Decree for appellants.*

MONTGOMERY and SHERICK, JJ., concur.

LEMERT, MONTGOMERY and SHERICK, JJ., of the Fifth Appellate District, sitting by designation in the Eighth Appellate District.