2 F.3d 670
 72 A.F.T.R.2d 93-5833, 93-2 USTC P 50,569
 In re CONSTRUCTION ALTERNATIVES, INC., Debtor.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, INC., Plaintiff-Appellant,
v.
CONSTRUCTION ALTERNATIVES, INC.; United States of America,
Defendants-Appellees.
 No. 92-3961.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 17, 1993.
Decided Aug. 10, 1993.
Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 17, 1993.
 
 David C. Olson (briefed), Vincent E. Mauer, Mark H. Klusmeier (argued), Frost & Jacobs, Cincinnati, OH, for Indiana Lumbermens Mut. Ins. Co.
 Gregory R. Wilson (argued and briefed), Cincinnati, OH, for Construction Alternatives, Inc.
 Tamara S. Heckman, U.S. Dept. of Justice, Tax Div., Gary R. Allen, Acting Chief (briefed), William S. Estabrook, Robert L. Baker (argued), U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, DC, Terry Serena, Cincinnati, OH, for U.S.
 Before: KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Appellant Indiana Lumbermens Mutual Insurance Company ("Lumbermens") appeals the judgment of the district court affirming the decision of the bankruptcy court. Lumbermens contends that the bankruptcy court and district court erred in concluding that the Internal Revenue Service ("IRS") had a lien and that this lien gave it priority to the proceeds of a construction contract that the debtor-taxpayer, Construction Alternatives, Inc. ("CA"), received from a project on which Lumbermens paid as C.A.'s surety. For the reasons stated below, we AFFIRM the district court.
 
 
 2
 * On May 16, 1990, the debtor, CA, an Ohio corporation, entered into a contract with the Forest Hills, Ohio School District ("School District") to remove asbestos from four of its schools. To obtain the contract, CA was required, under Ohio law, to supply a surety bond to assure performance of its obligations under the contract and to assure that it would pay the subcontractors, suppliers, and laborers that provided material and labor to the project. Lumbermens had issued a surety bond on April 6, 1990, and the bond was submitted to the School District along with CA's bid.
 
 
 3
 Pursuant to tax assessments made against CA for unpaid taxes, the IRS filed a notice of tax lien against CA on May 14, 1990 in the amount of $13,146.61, and, on August 20, 1990, the IRS filed a second notice of tax lien against CA for the additional amount of $30,194.90.[1] The next day, August 21, 1990, CA filed a petition for relief under Chapter 11 of the Bankruptcy Code.
 
 
 4
 On August 21, CA had completed all of its work on the asbestos removal project and was due to receive its final progress payment; however, CA had not paid all of its bills arising from the project. Pursuant to its obligation on the surety bond, Lumbermens paid at least two of the unpaid subcontractors or suppliers on the project, but the record does not reflect when or how much it paid them.[2]
 
 
 5
 At the time that CA filed its bankruptcy petition, CA and the School District had not yet agreed on the final amount due on the contract, although, as stated, the work was completed. On September 4, 1990, however, two weeks after CA filed its bankruptcy petition, CA and the School District agreed that $39,705 was the correct amount due. On September 6, 1990, CA filed a turnover complaint in bankruptcy court, seeking to have the $39,705 turned over to CA as the debtor-in-possession, and to have the validity and extent of any claims to the funds adjudicated. The bankruptcy court entered a turnover order on September 27, 1990, and the School District paid over the $39,705 to a cash collateral account established for the purpose of holding this final payment on the contract (referred to hereinafter as the "Fund"). The order provided that any party that wished to assert a claim to the Fund would be required to file an answer or the claim would be lost. Lumbermens and the IRS then filed answers.
 
 
 6
 Thereafter, CA filed a motion for partial summary judgment, alleging that no claimant to the Fund had a lien superior to the IRS' lien, that the amounts owed to the IRS exceeded the balance of the Fund, and, therefore, the IRS was entitled to the whole Fund. Lumbermens also filed a motion for partial summary judgment, asserting that CA holds the Fund in trust for Lumbermens' benefit; therefore, it argued, CA only has a legal interest in the Fund while Lumbermens has the equitable interest; thus, it contended, its equitable interest had never become part of the bankruptcy estate and had never been subject to the federal tax liens. Lumbermens also argued that it has an equitable lien on the Fund, through subrogation to the rights of the School District and the suppliers and subcontractors that it paid, that is superior to the IRS' lien. Last, Lumbermens contended that it has a lien superior to any that the IRS might have pursuant to 26 U.S.C. Sec. 6323(c) (1988).
 
 
 7
 On September 30, 1991, the bankruptcy court entered an order granting CA's motion for partial summary judgment and denying Lumbermens' motion. The court rejected Lumbermens' contention that CA held the Fund in trust for Lumbermens, reasoning that no express trust had been created in the suretyship agreement and that no constructive trust arose by operation of law or fact; therefore, it held, the Fund was property of CA's bankruptcy estate to which the tax lien had attached. It also held that Lumbermens had no equitable lien or interest in the Fund. The district court affirmed the bankruptcy court, and Lumbermens then appealed to this court.
 
 
 8
 Before this court, it is the position of the IRS that it has a lien on the Fund and that Lumbermens has no interest in the Fund. It is the position of Lumbermens that it has an equitable lien or beneficial interest in the Fund and that the IRS has no lien. It is Lumbermens' alternative position that, even if the IRS has a lien, Lumbermens' lien or interest has priority over the lien of the IRS.
 
 II
 
 9
 This court reviews de novo the decision of the district court reviewing a grant of summary judgment by the bankruptcy court. Stephens Indus., Inc. v. McClung, 789 F.2d 386, 391 (6th Cir.1988).
 
 III
 
 10
 Lumbermens first contends on appeal that the bankruptcy court erred in granting summary judgment to CA on the theory that the IRS has a valid lien because, it contends, CA has no interest in the Fund to which a tax lien could attach. This is so, Lumbermens contends, because CA had not, when it filed its Chapter 11 petition, satisfied all of the requirements of the contract inasmuch as it had not complied with certain provisions of Ohio law governing contracts with the state and with certain provisions in the contract between CA and the School District requiring CA to pay its subcontractors and materials suppliers. It also contends that, though CA had completed the work when it filed the Chapter 11 petition, CA has no interest in the Fund because CA and the School District had not agreed on the final amount due on the contract at the time the bankruptcy petition was filed. Thus, Lumbermens argues, since CA did not have the right, at the time CA filed its bankruptcy petition, to receive the final payment, CA has no property interest in the final payment to which a tax lien could have attached.
 
 
 11
 The issue we must initially decide, therefore, is whether CA has an interest in the Fund to which a tax lien could attach. A tax lien arises "upon assessment and attaches to 'all property and rights to property, whether real or personal, belonging to [the taxpayer]' including property which the taxpayer subsequently acquires." United States v. Safeco Ins. Co. of Am., 870 F.2d 338, 340 (6th Cir.1989) (quoting 26 U.S.C. Sec. 6321 (1988)) (alteration in original). State law determines what rights a taxpayer possesses in property; however, federal law determines whether those state-created rights are "property" or "rights to property" under Sec. 6321. Id. It is settled that a tax lien can attach to "a taxpayer's interest in property regardless of whether that interest is less than full ownership or is only one among several claims of ownership." Id. at 341. "Unresolved questions concerning the ultimate ownership of the property will not prevent provisional attachment of a federal tax lien." Id.
 
 
 12
 In the case at bar, it is undisputed that the work on the project was complete at the time that CA petitioned for bankruptcy. There were several bookkeeping and administrative matters, pursuant to state law and CA's contract with the School District, to be completed and several subcontractors to be paid, but CA owed nothing to the School District,[3] and therefore, no payments to the School District were required or other expenses incurred to perfect CA's claim to the final progress payment. Thus, we conclude that CA had earned the right to receive its final progress payment, and, under the principles stated above, we hold that the government has two valid tax liens on the Fund. See J.A. Wynne Co. v. R.D. Phillips Constr. Co., 641 F.2d 205, 208-09 (5th Cir.1981). The question to which we now turn is whether Lumbermens also has a lien on the Fund, and if so, whether that lien is superior to the tax liens.
 
 IV
 
 13
 Lumbermens contends that as a surety obligated to pay any unpaid contractors, laborers, or suppliers on the project, it has an equitable lien on the Fund, to the extent of its losses, through subrogation to the rights of the suppliers, laborers, and contractors that it paid in CA's stead, and also through subrogation to the rights of the School District. Citing Western Casualty & Surety Co. v. Brooks, 362 F.2d 486 (4th Cir.1966), a Fourth Circuit case applying Ohio law, it contends that its equitable lien relates back to the date the surety bond was issued.
 
 
 14
 The nature of the surety's interest is ascertained by reference to state law. Western Casualty & Surety Co. v. Brooks, 362 F.2d 486, 490 (4th Cir.1966); see Safeco, 870 F.2d at 341. All parties agree that Ohio law controls on state law issues. Under Ohio law, a surety that pays amounts owed to a subcontractor, laborer, or supplier is subrogated to the rights of those it has paid and to the rights of those persons whose obligations the surety has discharged, i.e., the owner and the contractor. Ohio ex rel. Star Supply v. Greenfield, 528 F.Supp. 955, 959 (S.D.Ohio 1981). A surety's rights, however, are no greater than the rights of the party to whom it is subrogated. United States v. Munsey Trust Co., 332 U.S. 234, 241-42, 67 S.Ct. 1599, 1602-03, 91 L.Ed. 2022 (1947); Miami Conservancy Dist. v. New Amsterdam Casualty Co., 118 F.2d 604, 606 (6th Cir.), cert. denied, 314 U.S. 640, 62 S.Ct. 80, 86 L.Ed. 513 (1941); Western Casualty, 362 F.2d at 491 (applying Ohio law). Therefore, in the instant case, Lumbermens has no greater rights to the Fund than does the School District, CA, or the unpaid subcontractors.
 
 
 15
 Lumbermens first contends that it has an equitable lien on the Fund by subrogation to the rights of the School District. It reasons that CA has not earned the right to receive the final payment on its contract with the School District because it failed to complete the contract by failing to pay the subcontractors. Thus, Lumbermens contends, the School District had a right to recoup enough of the final payment to pay the subcontractors and, therefore, Lumbermens has the same right to recoup from the Fund through subrogation to the rights of the School District.
 
 
 16
 The contract between CA and the School District required the School District to disburse payments to CA under a "progress payments" arrangement: every two weeks, CA could request another progress payment, and the amount due would be determined by the value of the work that CA had done during the two-week period. Further, the School District had no right, under its contract with CA, to retain any portion of the progress payments to CA pending CA's payments of subcontractors and suppliers. Once the work and bookkeeping details were completed, the final payment was due and was made, and, as we have previously noted, the School District had no right to retain the final progress payment. Thus, in short, the School District has no claim to the Fund under the terms of its contract with CA, and likewise, Lumbermens has no claim to the Fund through subrogation to the rights of the School District. Western Casualty, 362 F.2d at 492.
 
 
 17
 Lumbermens contends, however, that under the rule in Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), it has an equitable lien on the Fund that is superior to the tax lien. We disagree. There, a contract between a contractor and the government provided that a certain percentage of each progress payment would be retained by the government to pay any unpaid suppliers or subcontractors. The Supreme Court held that the surety had an equitable lien on the retained funds through subrogation to the rights of the government, the subcontractors that the surety had paid, and the bankrupt contractor itself. Id. at 141, 83 S.Ct. at 237. In the case at bar, however, the contract between CA and the School District, as heretofore pointed out, provided for no such retained fund. The Fund is simply the final progress payment on the contract and the School District has no further rights in the payment because the contract was complete. The School District was nothing more than a stakeholder. Western Casualty, 362 F.2d at 492.
 
 
 18
 Lumbermens also contends that it has a claim to the Fund through subrogation to the rights of the unpaid subcontractors, the two unpaid contractors whom it paid. Again, we disagree. Under Ohio law, when a subcontractor, laborer or supplier files a mechanics lien against a state project and proper notice of the lien is given to the state entity, such entity is then obligated to retain money from payments to the general contractor in an escrow account in an amount sufficient to satisfy the mechanics lien. Ohio Rev.Code Ann. Sec. 1311.28 (Anderson 1958); Ohio ex rel. Star Supply v. Greenfield, 528 F.Supp. 955, 959 (S.D.Ohio 1981). But, if the unpaid supplier or contractor does not file a mechanics lien, the governmental entity is not obligated or permitted to retain money from the contractor, and the unpaid suppliers and subcontractors have no rights to the progress payment. In the instant case, none of the unpaid suppliers or subcontractors filed a mechanics lien, so the School District was not required or permitted to retain any money from the progress payments to satisfy obligations to unpaid suppliers and subcontractors; thus, the School District has no rights to the Fund to which Lumbermens can be subrogated. Further, under Greenfield, subcontractors and suppliers that do not file a mechanics lien have no rights in the Fund. Id. at 959. In this priority contest against the IRS, an unsecured creditor loses, and therefore, Lumbermens, which is subrogated to the rights of the School District or an unsecured supplier or subcontractor, must lose.
 
 
 19
 Even assuming that Lumbermens does indeed have an equitable lien on the Fund through subrogation, Lumbermens would still lose in a priority contest with the IRS. As the Supreme Court has recently held, federal tax liens do not "automatically have priority over all other liens"; rather, they follow the "first in time, first in right rule"; however, a state law lien is not first in time unless it is "perfected" at the time the notice of the federal tax lien is filed. United States ex rel. Internal Revenue Serv. v. McDermott, --- U.S. ----, ----, 113 S.Ct. 1526, 1528, 123 L.Ed.2d 128 (1993). "Perfected" for purposes of the federal tax lien statute means that the identity of the lienholder, the property subject to the lien, and the amount of the lien are certain. Id.; United States v. Pioneer Am. Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963).
 
 
 20
 In the case at bar, the amount of Lumbermens' alleged equitable lien was not certain at the time that the tax liens were filed because the amounts owed to the unpaid persons on the project were not yet certain. Thus, the equitable lien, if indeed it exists, was not "perfected" when the tax liens were filed and, therefore, the tax liens take priority.
 
 V
 
 21
 Lumbermens next contends that the tax liens did not attach to the Fund because, it contends, CA holds the Fund as Lumbermens' trustee under the General Agreement of Indemnity, which CA executed with Lumbermens as part of the bonding undertaking; therefore, it contends, CA has no more than a legal interest in the Fund, while Lumbermens holds the equitable interest.[4] Since CA has only a legal interest in the Fund, Lumbermens contends, the tax lien only attached to the legal interest and the equitable interest is not subject to the tax lien. Therefore, if the Fund were determined to be subject to a trust, Lumbermens' equitable interest would not be subject to the IRS' liens.
 
 
 22
 There are two situations in which the Fund could be subject to a trust: 1) Ohio law provided that a portion of the progress payments were subject to a constructive trust for the benefit of unpaid suppliers and subcontractors; or, 2) the suretyship agreement created an express trust with the Fund as the trust corpus. There is no Ohio law that creates a constructive trust in favor of unpaid suppliers or contractors. The only case that Lumbermens cites in its favor is a Third Circuit case, Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc., 960 F.2d 366 (3rd Cir.1992). There, the Third Circuit held that funds paid by the state to a bankrupt general contractor were held in trust pursuant to a New Jersey statute and were not part of the bankruptcy estate. Since, however, Ohio has no such statute, as the district court pointed out, Universal Bonding does not apply to the facts of this case. We conclude that no trust was created by operation of Ohio law.
 
 
 23
 Further, contrary to Lumbermens' contention, we conclude that the General Agreement of Indemnity does not create an express trust. To create an express trust in Ohio, there must be a manifestation of intent to create a trust, there must be created a trust corpus, and there must be a fiduciary relationship between the trustee and the beneficiary. Brown v. Concerned Citizens for Sickle Cell Anemia, Inc., 56 Ohio St.2d 85, 382 N.E.2d 1155, 1158 (1978). With respect to the creation of a trust, this court has stated, applying Ohio law:
 
 
 24
 It is a well-settled principle of law in this and other jurisdictions that if one person pays money to another it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor, or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created. The intention of the parties will be ascertained by a consideration of their words and conduct in light of surrounding circumstances.
 
 
 25
 Federal Ins. Co. v. Fifth Third Bank, 867 F.2d 330, 333 (6th Cir.1989) (quoting Guardian Trust Co. v. Kirby, 50 Ohio App. 539, 199 N.E. 81, 83 (1935)). In this case, no provision of the General Agreement of Indemnity required CA to keep any portion of the progress payments as a separate trust fund, and the record does not indicate that CA kept the progress payments in a separate account. Thus, since there was no trust corpus, no trust was created. Accordingly, we conclude that CA was vested with both the legal and equitable interests in the Fund to which the tax liens could attach, and that Lumbermens was not vested with an equitable interest by the General Agreement of Indemnity.
 
 VI
 
 26
 Lumbermens next contends that under the federal tax lien statute, sureties' liens are given priority over tax liens, even if they are not yet "perfected" at the time of tax lien filing. Title 26 U.S.C. Sec. 6323(c) does indeed give priority to certain liens and security interests that are inchoate when the tax lien is filed. Section 6323(c) provides that a tax lien is primed by a surety's "security interest," even though the surety's "security interest" came into existence after the tax lien was filed, under the following circumstances: 1) the surety's "security interest," as here, is an obligatory disbursement agreement such as a suretyship agreement; 2) as here, the surety's interest is in "qualified property"[5] covered by the terms of a written agreement entered into before the tax lien filing;[6] and 3) the "security interest" would be protected under local law against a judgment lien that arose at the same time as the tax lien. 26 U.S.C. Sec. 6323(c) (1988).[7] Lumbermens contends, relying on the General Agreement of Indemnity, that under Sec. 6323(c) its "security interest" is superior to IRS' tax liens.
 
 
 27
 We, however, conclude that the General Agreement of Indemnity does not create a security interest. Subsection 6323(h) states that a "security interest" exists if "the property is in existence and the interest has become protected under local law against a subsequent judgment lien creditor." 26 U.S.C. Sec. 6323(h) (1988). Before Lumbermens' alleged "security interest" in the Fund would take priority over a subsequently-arising judgment lien under local law, Lumbermens would have been required to perfect its "security interest" by filing a financing statement in the appropriate office. Ohio Rev.Code Ann. Secs. 1309.21, 1309.23 (Anderson Supp.1992). Lumbermens did not do so; thus, we conclude that Lumbermens does not possess a "security interest" under Sec. 6323(c), and, therefore, the IRS has priority to the Fund.
 
 VII
 
 28
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The IRS also served a levy on the School District on August 9, 1990
 
 
 [2]
 In its motion for summary judgment in bankruptcy court, Lumbermens appended to the motion copies of two documents furnished by Central Acoustical Supply House and Grayling Industries, releasing it from any further obligation to them. The amount that Lumbermens paid them, however, is not specified
 
 
 [3]
 As will be seen, the School District had no right under its contract with CA to retain any portion of progress payments to insure payment of unpaid suppliers and subcontractors
 
 
 [4]
 The portion of the General Agreement of Indemnity upon which Lumbermens relies provides:
 [I]t is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Indemnitor or Indemnitors [CA] or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety [Lumbermens] would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have to sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.
 J.A. at 39.
 
 
 [5]
 "Qualified property" includes "the proceeds of the contract the performance of which was ensured" by the surety bond. 26 U.S.C. Sec. 6323(c)(4)(C)(i) (1988)
 
 
 [6]
 The General Agreement of Indemnity, which is part of the bonding agreement between CA and the School District, provides:
 [T]his Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.
 
 
 [7]
 Section 6323(c) provides in relevant part:
 To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which--
 (A) is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting--
 (iii) an obligatory disbursement agreement, and
 (B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.