In the Matter of EASTERN CONCRETE PAVING CO., Debtor.

Mark H. Shapiro, Trustee, Plaintiff,

v.

Jacob's Electrical Construction, Inc., Defendants,

and

Hartford Fire Insurance Co., Intervenor.

Bankruptcy No. 00–48387–PJS. Adversary No. 02–4182.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

May 28, 2003.

Austin D. Perrotta, Bloomfield Hills, MI, for Debtor.

Mark H. Shapiro, Southfield, MI, trustee.

**OPINION ON (I) TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (II) INTERVENING PLAINTIFF'S MOTION TO FIND FUNDS ARE NOT PROPERTY OF THE ESTATE; AND (III) DEFENDANT'S REQUEST THAT THE COURT FIND THE PAYMENTS ARE NOT VOIDABLE**

PHILLIP J. SHEFFERLY,
Bankruptcy Judge.

### I—Introduction

This matter comes before the Court upon cross-motions for partial summary

judgment regarding whether certain funds are property of this bankruptcy estate under § 541 of the Bankruptcy Code.

In 1998, Eastern Concrete Paving Co. ("Debtor") contracted with the Township of Canton ("Canton") to repair certain roads. Hartford Fire Insurance Company ("Hartford") issued payment and performance bonds for the project. As part of that transaction, Debtor and Hartford also entered into a General Indemnity Agreement. Debtor proceeded with the road work, hiring Jacob's Electrical Construction, Inc. ("Defendant"), to perform certain electrical work as a subcontractor. Before completion of the project, an involuntary chapter 7 petition was filed against Debtor on June 1, 2000. During the gap period, before the order for relief was entered, Debtor issued two checks to Defendant for a total of $73,126.70. Trustee filed this adversary proceeding against Defendant to avoid these transfers under § 549 of the Bankruptcy Code. Hartford then intervened in this adversary proceeding.

The Trustee filed a motion for partial summary judgment on the issue of whether these payments were transfers of property of the bankruptcy estate. Defendant and Hartford each filed a reply. Hartford also filed its own counter-motion to have these funds and others in the hands of Trustee to be deemed not property of the estate, relying on an express trust theory. Hartford based its argument on language in the General Indemnity Agreement that "[a]ll money paid, ... given under the bonded contract shall be impressed with a

trust ...." (Hartford's Mot., Ex. B, § VIII.) Hartford contended that not only are the transfers to Defendant not avoidable, but funds paid to Trustee by Canton are not property of the estate and should be remitted to Hartford for payment to other subcontractors.[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E).

## II—Facts

Hartford issued three bonds for the Canton project on September 1, 1998. The bonds guaranteed Debtor's performance, payment of subcontractors, and the maintenance and repair of the work done under the contract. (See id., Ex. A.) On September 24, 1998, Debtor and Canton entered into the construction contract, and on October 5, 1998, Debtor subcontracted with Defendant for electrical services for the Canton project. Debtor and Hartford executed the General Indemnity Agreement on April 29, 1999. The relevant provisions are set forth in Section VIII which provides as follows:

> If a Bond is executed in connection with the performance of a contract, the entire contract price shall be dedicated to the satisfaction of the conditions of the bonded contract. All money paid, or any securities, warrants, checks or evidences of debt, plus any proceeds thereof, given under the bonded contract shall be impressed with a trust in the hands of [Debtor] in favor of [Hartford] for the purpose of satisfying the conditions of

---

1. Defendant also filed a motion to find the payments are not voidable, based on the Michigan Builders' Trust Fund, which Defendant argued acts to exempt the payments from Debtor's estate. Trustee correctly noted that the statutory trust fund does not apply to contracts for public projects. *See Air Products & Chemicals, Inc. v. J.F. Cavanaugh Co. (In re Certified Question from the U.S. District Court)*, 411 Mich. 727, 311 N.W.2d 731, 733 (Mich.1981) ("[T]he act applies only to private construction contracts. It has no applicability to public construction contracts."). Defendant also mistakenly argued that the payments are not avoidable preferences under § 547, which is irrelevant to Trustee's action under § 549.

the bonded contract and shall be used for no other purpose until such conditions have been fully satisfied.

(*Id.,* Ex. B, § VIII.)

Debtor continued to perform on the Canton project, even after the involuntary petition was filed on June 1, 2000. Debtor made a payment of $22,141.35 to Defendant on June 8, 2000, for work done on the Canton project. Debtor made the second payment at issue on June 27, 2000, in the amount of $50,985.35. The order for relief was entered August 11, 2000. On September 26, 2000, Canton notified Hartford that Debtor was in default. Thereafter, Canton released contract funds directly to Trustee, totaling $87,000. Trustee used most of those funds to complete the project. Hartford received a notice of claim on the bond from Defendant for approximately $21,000 for additional work done by Defendant on the project, for which Defendant has not been paid.

Trustee filed his adversary complaint against Defendant on March 7, 2002, seeking avoidance of the two June, 2000 payments under § 549. The Court entered a stipulated order allowing Hartford to intervene. Hartford then filed a complaint for declaratory relief, asking that the Court declare that Debtor does not have an equitable interest in the funds paid by Canton because those funds were the subject of an express trust under the General Indemnity Agreement. Hartford filed a motion to have certain funds deemed not property of the estate on the basis that the General Indemnity Agreement created an express trust, and any funds received from Canton are not property of the estate under § 541(d). Hartford applied this theory not only to payments made by Debtor, but to the $87,000 paid by Canton to Trustee as well. Defendant concurred with Hartford's position in its motion to find the payments are not avoidable. Trustee filed

a motion for partial summary judgment on several grounds: first, that there is no express trust; second, that Hartford's rights under the General Indemnity Agreement arise only after Debtor's default and the payments at issue were made pre-default; and third, if a trust is found to exist, any party claiming rights to Debtor's funds under the trust must be able to trace their particular funds because they were commingled among several bank accounts and with funds that Debtor received from other projects.

### III—Standard for Summary Judgment

Fed.R.Civ.P. 56(c) for summary judgment is incorporated into Fed. R. Bankr.P. 7056(c). Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine" issue is one where no reasonable fact-finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir.1998) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

### IV—Discussion

■ Trustee is proceeding under 11 U.S.C. § 549, which gives him authority to avoid a post-petition "transfer of property of the estate." Under § 541(a), Debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The Bankruptcy Code limits property of the estate when a debtor holds only a legal

interest. Such property "becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). If there is an express trust over the funds paid by Canton, the extent to which they become property of the estate is limited to the legal interest. *See Begier v. I.R.S.,* 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'").

■ There are a number of reported cases in the Sixth Circuit addressing whether or not an express trust exists and whether the alleged trust res is property of a bankruptcy estate. Although some of these cases reach differing conclusions, the starting point in each of them is an examination of state law and whether the facts in such case evidence the existence of an enforceable trust under the laws of that particular state. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law[, u]nless some federal interest requires a different result ....").

■ Under Michigan law, the creation of a trust depends on intent and the existence of the required elements. *See Pierowich v. Metropolitan Life Insurance Co.,* 282 Mich. 118, 275 N.W. 789, 790 (1937) ("Whether or not a trust was created must depend upon the intention of the [settlor] in providing for the disposition of the [property] in the manner which he instructed and whether the necessary requisites to the creation of a trust were observed."). The Michigan Supreme Court explained the general rule for ascertaining the intent of the settlor as follows:

"Whether the transferor has manifested an intention to give property to a person in trust or to give it to him for his own benefit is a question of interpretation of the transferor's language in the light of all the circumstances.

No trust is created if the transferor does not manifest an intention to impose enforceable duties upon the transferee ... Even though the purpose to which he desires the transferee to apply the property is clearly something other than for the personal benefit of the transferee, no trust is created if the settlor manifested an intention to impose merely a moral obligation, and to leave the transferee free from any legal obligation to apply the property to the purpose [ ]. His intention not to impose enforceable duties may appear from the fact that the purposes to which the property is to be applied are so broad as to show that the transferor intended that the transferee should be entitled to use the property for his own benefit."

*Townsend v. Gordon,* 308 Mich. 438, 14 N.W.2d 57, 61 (1944) (quoting 1 *Restatement of the Law of Trusts* § 125). The requisites of an express trust are: "(1) the existence of a clearly defined res; (2) an unambiguous trust relationship; and (3) specific affirmative duties undertaken by the trustee." *Kitchen v. Boyd (In re Newpower),* 229 B.R. 691, 705 (W.D.Mich.1999) (citation omitted), *aff'd in part and rev'd in part on other grounds,* 233 F.3d 922 (6th Cir.2000).

■ In this case, Hartford and Defendant rely on the declaration of trust in the General Indemnity Agreement that "[a]ll money paid, or any securities, warrants, checks or evidences of debt, plus any proceeds thereof, given under the bonded contract shall be impressed with a trust in the hands of [Debtor] in favor of [Hartford] for the purpose of satisfying the conditions

of the bonded contract and shall be used for no other purpose until such conditions have been fully satisfied." (Hartford's Mot., Ex. B, § VIII.) Although this language arguably manifests the intent of Hartford, and arguably describes a trust res and a trust relationship, the document does not manifest any intention by Canton, as the transferor of the funds, to impose a trust on such funds or to impose any enforceable duties upon the Debtor as trustee as is required under Michigan law by *Townsend*. The plain fact is that the General Indemnity Agreement was made not by Canton, as the settlor of the alleged trust, but instead by Hartford, although Hartford is at most a contingent beneficiary and not a transferor of the funds that make up the alleged trust res.

In *Federal Insurance Co. v. Fifth Third Bank*, 867 F.2d 330 (6th Cir.1989), the U.S. Court of Appeals for the Sixth Circuit found an express trust was created under Ohio law based on language similar to the General Indemnity Agreement, but with an important distinction. In this case, the plaintiff Federal Insurance Co. ("Federal") acted as surety on a bond for Becker Electric Company ("Becker") on a project for the State of Ohio. The contract between Becker and the State of Ohio provided that

> [a]ll monies paid on account to any contractor for materials or labor shall be regarded as fund [sic] in his trust for payment of any and all obligations relating to this contract and no such amount of monies shall be permitted to accrue to the contractor until all such obligations are satisfied. Evidence satisfactory to the state may be required to show that all current obligations relating to this work are satisfied before releasing any payment due on the work. Before payment of the final estimate, each contractor shall file an affidavit with the state, stating that monetary oblications [sic]

relating to lienable items in connection with the work have been fulfilled.

*Id.* at 332 (errors in original). Becker had a pre-existing credit relationship with the defendant Fifth Third Bank. *Id.* at 331. After Becker began work on the state project, the defendant offset twelve deposits, two of which represented progress payments from the state. *Id.* at 332. After Becker ceased all operations, Federal completed performance on the contract, and then sued to recover the setoff funds. The district court found that the contract language did not create a trust. The Sixth Circuit reversed, noting that the district court proceeded on the erroneous assumption that the defendant bank was the trustee, and there was no evidence that it had agreed to hold the funds for the benefit of the job creditors. *Id.* at 333. Instead, the Sixth Circuit found that Becker was the trustee, and all the elements of a trust under state law had been met. *Id.*

The critical distinction between *Federal Insurance* and the case before the Court is that the trust language was contained in an agreement between the *owner of the project as the transferor of the funds* and the *general contractor,* not in an agreement between the contractor and the surety. Unlike the General Indemnity Agreement in this case, the declaration of express trust in *Federal Insurance* was made by the settlor of the trust: i.e., the party transferring the funds into the trust. Thus, in *Federal Insurance,* the contract provision presented that court with clear evidence that "[t]he State asked, and Becker agreed, to hold the progress payments in trust for the job creditors." *Id.* at 334. There is no such evidence before this Court as to Canton's intent. The contract between Canton and Debtor is not part of the record. Nor are there any writings that might reveal either that Canton intended to declare a

trust or that it intended to impose any restrictions on Debtor with regard to the use of the funds paid by Canton to Debtor. Unlike *Federal Insurance,* where the Court had before it ample evidence of the intention of the settlor, both to create a trust and to impose duties upon the Trustee, this Court has before it only the language in the General Indemnity Agreement which says nothing about the intention of Canton as the transferor of the funds either to create a trust upon such funds or to impose duties or restrictions upon the Debtor with respect to the use of such funds.

Although the Sixth Circuit in *Federal Insurance* reached the conclusion that an express trust had been created in that case, the Sixth Circuit has also refused to find that an express trust has been created where the only evidence of an express trust is a provision contained in a contract between a surety and a contractor like the one in the General Indemnity Agreement. In *Indiana Lumbermens Mutual Insurance Co. v. Construction Alternatives, Inc. (In re Construction Alternatives, Inc.),* 2 F.3d 670 (6th Cir.1993), the trust language was contained in the indemnity agreement between the owner and the general contractor/debtor, and provided

> [i]t is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the [debtor] or otherwise, for the benefit of and for payment of all such contract or contractors for which the Surety [ ] would be liable under any of said Bonds . . . .

2 F.3d at 676 n. 4. In analyzing whether there was a manifestation of an intent to create a trust under Ohio law, the court found that the indemnity agreement's failure to require that the debtor hold progress funds in a separate account meant "there was no trust corpus, [and therefore] no trust was created." *Id.* at 677 (citing *Federal Insurance Co.,* 867 F.2d at 333 (citing *Guardian Trust Co. v. Kirby,* 50 Ohio App. 539, 199 N.E. 81, 83 (1935))).

■ While the *Construction Alternatives* opinion may have placed more emphasis upon the failure to maintain a segregated account of the trust funds than did *Federal Insurance,* 867 F.2d at 334, (where the court found "this is not a determining factor of whether a trust was formed"), nevertheless, the holding of *Construction Alternatives* is applicable to this case. A provision contained in an indemnity agreement between the surety and contractor purporting to create a trust, without any evidence of the intention of the settlor to create a trust or impose restrictions on the use of the funds by the purported trustee, is insufficient by itself to create an enforceable express trust. This holding is consistent both with Michigan law and with *Federal Insurance.*

The cross-motions of the chapter 7 trustee, Hartford, and the Defendant go on to address whether Hartford's rights under the General Indemnity Agreement arise only after default and whether tracing is a requirement in order for beneficiaries of a trust to prevail. However, because this Court concludes that the General Indemnity Agreement by itself is insufficient as a matter of law to create an express trust on the facts of this case, the Court need not reach those issues. In sum, this Court concludes that the payments that the Trustee seeks to recover from the Defendant were transfers of property of this estate under § 541 of the Bankruptcy Code and were not payments of funds that were subject to any express trust.

Therefore, this Court (i) denies Hartford Fire Insurance Company's motion to have certain funds not deemed property of the

estate; (ii) grants Plaintiff's motion for partial summary judgment; and (iii) denies Defendant's request to find that payments heretofore received by Defendant are not voidable. The parties shall submit an order consistent with this opinion. The Court notes that a status conference has been scheduled for Tuesday, June 17, 2003 at 10:00 a.m., to discuss trial of the remaining issues in this case.