Walter P. NIECKO and Thelma A. NIECKO, Plaintiffs–Appellants,

v.

EMRO MARKETING COMPANY, Defendant–Appellee.

No. 91–2039.

United States Court of Appeals, Sixth Circuit.

Argued April 19, 1992.

Decided Sept. 1, 1992.

William J. Stapleton (argued), Bruce T. Wallace (briefed), Hooper, Hathaway,

Price, Beuche & Wallace, Ann Arbor, Mich., for plaintiffs-appellants.

Mark F. Miller (argued and briefed), Denardis, McCandless & Muller, Detroit, Mich., for defendant-appellee.

Before: KEITH and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Plaintiffs, Walter P. Niecko and his wife Thelma A. Niecko, appeal the Order of the United States District Court for the Eastern District of Michigan, Southern Division, granting summary judgment in favor of defendant, Emro Marketing Co., 769 F.Supp. 973.[1] Plaintiffs originally filed their complaint seeking a recovery of monies expended in an environmental cleanup of property which had been purchased from defendant. Defendant filed a Motion For Summary Judgment claiming plaintiffs had assumed liability for the property according to the express terms of the Purchase Agreement. The District Court granted defendant's motion. Plaintiffs filed a Motion for Rehearing or Reconsideration which was denied. Plaintiffs filed a timely Notice of Appeal. For the reasons that follow, we affirm the decision of the District Court.

## I.

Plaintiffs are seeking to recover $138,367.00 expended in cleaning up environmental toxins from property located adjacent to an exit/entrance ramp of Interstate I–94 in Jackson, Michigan. Plaintiffs purchased the property from defendant in March, 1987 for $46,000.00. In 1989, plaintiffs were contacted by the McDonalds Corporation concerning a potential sale of the property at issue and the adjacent 5.5 acres of property which was also owned by plaintiffs. Before agreeing to purchase the property, McDonalds conducted an environmental audit which revealed the existence of hydrocarbons[2] contaminating the property. McDonalds, nevertheless, agreed to purchase the property, but made the sale contingent upon plaintiffs removal of the contaminated soil. Plaintiffs agreed to the contingency and removed the contaminated soil at a cost of approximately $130,000.00. McDonalds purchased the parcel of property for $110,000.00. The adjacent 5.5 acres, which had been purchased by plaintiffs in 1986 for $20,000.00, was also sold to McDonalds for $250,000.00.

The source of the hydrocarbon contamination is not in dispute. The record discloses multiple previous owners of the property. In the mid–1960's the property was owned by the Humble Oil & Refining Co. which built and operated a gasoline service station. Humble was subsequently purchased by Exxon Corp. which sold the property and gas station to the Checker Oil Co. The gas station ceased operations in 1981. Checker Oil Co. was ultimately purchased by the Marathon Oil Co. Marathon, in turn, transferred title of the property to defendant, its subsidiary, in January, 1984. Although defendant never operated a gas station on the property, defendant did agree to assume all liabilities of the Checker Oil Co.

The gas station itself was originally constructed in the 1960's with three 6,000 gallon underground storage tanks (UST) installed for containing the gasoline inventory. In the 1970's, an additional 8,000 gallon tank was also installed. There was a 300 gallon UST used for the storage of waste oil as well. Upon the closing of the gas station in 1981, the remaining gasoline was pumped from the tanks via the customer gas pumps. The UST's were removed by defendant in December, 1984. A "sniff test" was performed to determine whether there had been any leaks of gasoline. Although the "sniff test" proved negative, it is undisputed that the source of the contamination was related to the UST's. The exact cause, however, has never been determined.

**1.** Emro Marketing Co. is a wholly owned subsidiary of the Marathon Oil Co.

**2.** The hydrocarbons were all petroleum related and consisted of benzene, toluene, ethyl benzene, and xylene.

In March, 1987, the property was sold to plaintiffs. The Purchase Agreement contained the following disclaimers:

10. It is expressly agreed that Seller makes no warranties that the subject property complies with federal, state or local government laws or regulations applicable to the property or its use. Buyer has fully examined and inspected the property and takes the property in its existing condition with no warranties of any kind concerning the condition of the property or its use.

11. Buyer acknowledges that he has inspected and is familiar with the condition of the property; that Seller has not made any warranties or representations as to the condition of said property, including, but not limited to, soil conditions, zoning, building code violations, building line, building construction, use and occupancy restrictions (and violations of any of the forgoing), availability of utilities; and that Buyer is purchasing the same "as is"; that he assumes all responsibility for any damages caused by the conditions on the property upon transfer of title.

Purchase Agreement, Paragraphs 10, 11.

Plaintiffs filed a complaint in district court seeking relief on a variety of theories including: 1) breach of contract; 2) fraud; 3) violating 42 U.S.C. § 9607(a) known as the Comprehensive Environmental Response Compensation and Liability Act (CERCLA); 4) violating The Michigan Environmental Protection Act (M.C.L. § 691.-1201. *et seq.*); 5) negligence; 6) nuisance; and 7) trespass. The district court granted summary judgment to defendants, based in large part on the two disclaimer clauses of the Purchase Agreement in which plaintiffs assumed liability and took the property "as is".

## II.

Plaintiffs contend that the District Court erred by not holding defendant liable pursuant to the Michigan Leaking Underground Storage Tanks Act (LUST Act). Plaintiffs argue that the LUST Act created a liability for the clean up which defendant could not transfer. Plaintiffs initially claim that the LUST Act did not become effective until 1989. Hence, plaintiffs charge that as a matter of basic contract interpretation that since the sale of property predated the LUST Act, the parties could not have contemplated a transfer of liability under the terms of the LUST Act. Accordingly, plaintiffs now argue they did not, nor could they have, contracted to assume LUST Act liability. Thus, according to plaintiffs, defendants necessarily still maintain LUST Act liability.

 It must be noted that although plaintiffs raised the issue that defendants could not transfer liability under the LUST Act in the district court, they did so, not based upon the effective date of the statute, but rather on their interpretation of the statute. It is well settled law that this court will not consider an error or issue which could have been raised below but was not. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir.1990) (A reviewing court will not address issues presented to the district court, but refashioned in a more positive light on appeal). Therefore, this court should not consider this argument on appeal.

Plaintiffs also argue that even if LUST Act provisions had been in effect, an "as is" clause is ineffective to transfer liability. Plaintiffs argue that an "as is" clause precludes only claims based on breach of warranties and does not act to release a claim based upon environmental statute.

 The District Court, however, found plaintiffs had failed to demonstrate that the release of contaminators was of such a nature and extent as to be subject to action under LUST. The district court noted that at no time were plaintiffs ordered to clean up the soil by any governmental entity either federal, state or local. Rather, it was plaintiffs' desire to sell the property to McDonalds at a substantial profit which motivated their clean up. Furthermore, it was only due to McDonalds' insistence that plaintiffs incurred the clean up expense. There has been no showing that the standards McDonalds used for determining a

cleanup was needed in any way reflect the standards used under the LUST Act. Therefore, plaintiffs failed to meet the threshold inquiry of establishing a LUST Act violation. However, the District Court correctly noted that although the clean up of the property was done without government compulsion, this does not automatically bar plaintiffs from recovering. Rather, because the case was disposed of via summary judgment, the District Court looked at the language of the Purchase Agreement to determine whether LUST Act liability, if found, could be transferred.

■ Plaintiffs argument that the "as is" clause applies to only breach of warranties defies the plain language of the contract. Paragraph 11 expressly states that defendant makes no "warranties or representations" as to soil conditions, **and that plaintiffs assume all responsibility for any damages caused by the conditions on the property upon transfer of title.** It is this second clause that assumes liability for the conditions of the property which is much more than a warranty disclaimer. The plain language of the contract demonstrates that both parties contemplated defendant would be released from damages resulting from defects in the property (a warranty disclaimer), and also from damages to third parties from conditions on the property (an assumption of liability). Therefore, the District Court correctly held that the "as is" clause applied to third parties and was more than a mere warranty disclaimer. *See Rodenbeck v. Marathon Petroleum Co.,* 742 F.Supp. 1448, 1454 (N.D.Ind.1990); *FMC Corp. v. Northern Pump Co.,* 668 F.Supp. 1285, 1291 (D.Minn. 1987).

### III.

■ Plaintiffs next argue that, despite the language of the contract, liability may not be transferred according to the terms of the Michigan LUST Act. This question poses a more challenging issue. The crux of this argument stems from the inartful

wording of the statute itself. The LUST Act[3] provides in relevant part as follows:

M.C.L. 299.842, Liability of owners or operators.

(6) No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from owner or operator or from any person who may be liable for a release or threat of release under this act, to any person the liability imposed under this act. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this act.

(7) This act shall not bar a cause of action that an owner or operator or any other person subject to liability under this act, or a guarantor, has or would have by reason of subrogation or otherwise against any person.

M.C.L. 299.842(6), (7).

The wording of the statute thus seems contradictory. The first sentence of clause (6) states that indemnification agreements are invalid, while the second statement of clause (6) appears to allow for them. While there is no authority interpreting the LUST Act, there are a variety of cases interpreting the language of CERCLA. As might be expected, however, the courts have interpreted this provision in a variety of manners. Some courts have held that the second sentence has been nullified by the first. Apparently, this interpretation was molded by a public policy against any transfer of liability. *See, e.g., Jones–Hamilton Co. v. Kop–Coat, Inc.,* 750 F.Supp. 1022 (N.D.Cal.1990).

However, the better interpretation, and the one used by the district court in the instant case, is that the first sentence provides that all parties involved are to be jointly and severally liable to the claimant under the statute. Where the claimant is the government, liability may not be transferred. However, as between the parties allegedly responsible, the district court held that liability may indeed be transferred.

---

**3.** The language of this portion of the Michigan LUST Act is virtually identical to the language found in 42 U.S.C. § 9607(e)(1), (2), The Com-

prehensive Environmental Response Compensation and Liability Act (CERCLA).

In other words, the first sentence ensures the clean up is performed and those responsible cannot escape their liability for cleaning the property. However, in terms of *financial* liability, the parties may allocate the costs of the clean up between them. Such an interpretation is consistent with the legislative history of CERCLA, *See* 126 Cong.Rec. 30,984 (1980). This is a more palatable and consistent interpretation of the LUST Act because it allows the two sentences to be read as internally consistent. The Ninth Circuit came to a similar holding in *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1460 (9th Cir.1986). We, therefor, join with the Ninth Circuit in its interpretation of these clauses under CERCLA and apply the reasoning to the Michigan LUST Act.

■ The District Court correctly noted that Emro could not have contracted its liability away as regards a suit had it been brought by the State of Michigan (or even the Federal Government). However, the clean up in question in the case *sub judice* was done by plaintiffs for the express purpose of improving the property and the adjacent property to complete a sale to McDonalds. Plaintiffs were compensated handsomely for the total parcel of lands. Since the State of Michigan was not involved, the second sentence of M.C.L. § 299.842(6) applies. Accordingly as between plaintiffs and defendant, the purchase agreement validly transferred liability for the costs of the cleanup involved to plaintiffs.

## IV.

■ Plaintiffs argue that even if it was possible to transfer liability for the clean up, the Purchase Agreement failed to do so. Plaintiffs argue that the indemnification clause of the Purchase Agreement requires a government ordered clean up which did not occur. Plaintiffs further charge that since the contamination occurred prior to the transfer of title, the damages are not covered by the indemnification clause.

Initially, it must again be noted that this argument was also never raised to the District Court, therefore, this court should not address its merits. Nevertheless, a cursory examination of the indemnification clause involved demonstrates the fruitlessness of plaintiffs' claims. Plaintiffs base their argument on Paragraph 12 of the Purchase Agreement which provides as follows:

12. Buyer expressly agrees to indemnify and save seller harmless from any governmental action, citation, demand or claim relating to noncompliance of the property or its use with. government laws, rules or regulations where the act or condition upon which the action, citation, demand or claim is based is an act or condition alleged in the action, citation, demand or claim to have occurred or existed upon a date subsequent to the date of the consummation of this transaction and the conveyance of title to Buyer.

Purchase Agreement, Paragraph 12.

Plaintiffs claim that there was no government action involved in this suit and so there can be no indemnification. Clearly, it is true that there was no governmental action. This represents one of the major weaknesses in plaintiffs case. However, it is plaintiffs' own actions which attempt to invoke governmental regulations. If plaintiffs had been able to recover under the LUST Act, then there would have been governmental action which would have evoked the indemnity clause. Furthermore, although the contamination occurred before the transfer of title, it is again plaintiffs' actions which are dispositive of this issue. The indemnification provision applies to the cleanup which plaintiffs performed as a condition of the sale of property. The cleanup created the cost for which defendants would have been indemnified had defendant been found liable. Therefor, if plaintiffs had successfully established a LUST Act violation, defendant would have been indemnified pursuant to Paragraph 12 of the Purchase Agreement. Since no LUST Act violations were established, this clause is not applicable. Plaintiffs' usage of this clause would require a very strained interpretation of the contract.

More importantly, the issue was not raised at trial, hence, this court need not consider it.

### V.

Plaintiffs next contend defendant failed to disclose critical facts pertaining to the environmental condition of the property. Plaintiffs argue that this omission constitutes a fraudulent concealment negating the "as is" clause of the Purchase Agreement. Plaintiffs contend they were not told that gasoline remained in the UST's after the station was closed. Plaintiffs further contend they were not told that the pipes connecting the UST's to the pumps were left in the ground at the time the UST's were removed. Plaintiff concludes by assuming this must have caused contamination and was a material fact that a buyer of the site should have been made aware of.

■ Plaintiffs do not assert that defendant made any affirmative representations that were false. Rather, they attempt to suggest that it was fraud for defendant to remain silent. However, the cases cited by plaintiffs in support of their position involve more than mere silence. They involve actions, by a party, which were performed to mislead the other party and when it became clear that the other party was misled, the performing party remained silent. In the case at bar, plaintiffs were well aware the property had been used as a gasoline station. They were given *carte blanche* to conduct an inspection of the property. Plaintiffs testified their inspection consisted of merely driving by the station a few times and on one occasion walking around the premises. Plaintiffs introduced no evidence that they inquired about or were misled, either intentionally or accidentally, about the UST's. In short, plaintiffs have failed to show any type of fraudulent concealment. Furthermore, there has been no showing that defendant was even aware that the property was contaminated or that the UST's had leaked.

Defendant conducted a "sniff test" to examine for leaks when the UST's were removed. Plaintiffs imply that this was an insufficient test. There was, however, no evidence that a more involved test was required. Plaintiffs, to be successful on this claim, must, at the very least, show some knowledge on the part of defendant.

Moreover, the defects in the property should have been easily discoverable had plaintiffs bothered to do any type of serious inspection. Indeed, McDonalds, in its bid to buy the property insisted on first conducting a detailed soil sample. When the results showed contaminated soil, McDonalds was able to adjust the terms of the sale accordingly. Plaintiffs in this case were either lazy or careless in their purchase of the property and are now seeking ways to force defendant to pay for plaintiffs lack of judgment. Plaintiffs have failed, however, to show anything other than poor business sense.

■ Plaintiffs next argue that this alleged "fraudulent" conduct precludes defendants from relying on the "as is" clause under Michigan law. The Supreme Court of Michigan has addressed this issue, holding as follows:

> ... Under the common law, a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser. Caveat Emptor prevails in land sales, and the vendor, with two exceptions, is not liable for any harm due to defects existing at the time of sale.
>
> The first exception is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an unreasonable danger. Failure to make such a disclosure or efforts to actively conceal a dangerous condition render the vendor liable for resulting injuries. The second exception is that a vendor is liable to those outside the land for a dangerous condition on the land after the sale until the purchaser discovers or should have discovered it.... Under both exceptions, then, knowledge of the defect on the part of the purchaser relieves the vendor of any duty or liability.

*Christy v. Glass,* 415 Mich. 684, 329 N.W.2d 748 (1982).

In the case at bar, it was incumbent on plaintiffs to demonstrate they fit one of the two exceptions to the general rule. Concerning the first exception, plaintiffs failed to show that an unreasonable danger was involved. The only reason for the clean up was to meet the criteria set by McDonalds for the consummation of the sale from plaintiffs to McDonalds. There was no government intervention. There was no showing that the soil presented a danger to anyone. In avoiding a motion for summary judgment, it is incumbent on the non-moving party to demonstrate an issue of fact after the moving party has alleged no material facts at issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if plaintiffs wanted to create an issue of fact as to the dangerousness of the soil, they could not rest on mere allegations, but were required to submit some evidence on the issue. As was stated earlier, the evidence shows that the only reason for the clean up was to facilitate a sale, not to correct a dangerous situation.

Nor can plaintiff's take refuge in the second exception under *Christy.* There has been no showing of any damage to a third party. The only possible third parties are either McDonalds or the State of Michigan. Neither of them has any interest in the suit. Accordingly, plaintiffs' argument that Michigan law prohibits the "as is" clause from being enforced is without merit.

## VI.

■ Plaintiffs' complaint also sought recovery as an owner of the adjacent property. Plaintiffs owned, and sold to McDonalds, not only the property which was bought from defendant, but an adjacent 5.5 acres. Plaintiffs contend that their ownership rights of the adjacent 5.5 acres were violated by the contaminated soil. The district court, however, ruled that these claims were waived by plaintiff pursuant to the terms of the Purchase Agreement.

Paragraph 11 of the Purchase Agreement provides as follows:

11. Buyer acknowledges that he has inspected and is familiar with the condition of the property; that Seller has not made any warranties or representations as to the condition of said property, including, but not limited to, *soil conditions,* zoning, building code violations, building line, building construction, use and occupancy restrictions (and violations of any of the forgoing), availability of utilities; and that Buyer is purchasing the same "as is"; **that he assumes all responsibility for any damages caused by the conditions on the property upon transfer of title.**

Purchase Agreement, Paragraph 11 (emphasis added).

The district court correctly noted that the last sentence of paragraph 11 expressly holds the buyer responsible for any damages caused by the conditions of the property, including soil conditions. It is this assumption of liability that precludes plaintiffs' recovery. Plaintiffs correctly assert that if someone else owned the land they could bring these actions. In this case, however, plaintiffs, as adjacent land owners, would be forced to sue themselves as owners of the contaminated property. Based upon this reasoning that the district judge correctly held plaintiffs waived their claims. Defendants, however, are clearly absolved from this liability via plaintiffs' assumption of the liability. Therefore, the court properly dismissed plaintiffs claims.

## VII.

■ This court's review of a grant of summary judgment is *de novo. See Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). When reviewing a summary judgment, however, an appellate court must not consider evidence that was not before the district court. *Tanks v. Greater Cleveland Regional Transit Auth.,* 930 F.2d 475, 481 (6th Cir.1991). Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the Supreme Court stated, "as to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See also Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991). If the facts in a case are undisputed, one of the parties is entitled to judgment as a matter of law. *Tanks v. Greater Cleveland Regional Transit Auth.,* 930 F.2d 475, 477 (6th Cir.1991).

In the case at bar, there is no genuine issue of material fact. Rather, plaintiffs are appealing the District Court's interpretation of the law. Since there are no real facts in dispute, this case is ripe for summary judgment. A *de novo* review of the record demonstrates the District Court properly interpreted the law and was correct in granting defendant's Motion for Summary Judgment.

## VIII.

The Judgment of the District Court granting defendant's Motion For Summary Judgment should be hereby AFFIRMED.