OHIO FARMERS INSURANCE
CO., Appellant,

v.

HUGHES–BECHTOL, INC.,
et al., Appellees.

Nos. C–3–92–281.
Bankruptcy No. 3–88–02492.
Adversary No. 3–89–0074.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 24, 1998.

Dennis Daryl Liston, Lisa A. Weekley, McNamara and McNamara—2, Columbus, OH, for Ohio Farmers Insurance Company, appellant.

Wayne Howard Dawson, Turner, Granzow & Hollenkamp—3, Dayton, OH, William Brokate Fecher, Statman Harris & Bardach LLC, Cincinnati, OH, for Society Nat'l Bank fka Society Bank, National Association, intervenor.

Robert Bruce Berner, Arter & Hadden LLP, Dayton, OH, Thomas Richard Noland, for Hughes–Bechtol Inc., appellee.

DECISION AND ENTRY AFFIRMING IN PART AND REVERSING IN PART THE FINAL JUDGMENT OF THE BANKRUPTCY COURT, AND REMANDING CASE TO THAT COURT; JUDGMENT TO ENTER ACCORDINGLY; TERMINATION ENTRY

RICE, Chief Judge.

This is an appeal from a decision and order entering declaratory judgment and granting in part and denying in part motions for summary judgment, entered by the United States Bankruptcy Court for the Southern District of Ohio in an adversary proceeding, *Ohio Farmers Ins. Co. v. Hughes–Bechtol, Inc.*, Adv. No. 3–89–0074 (Bankr.S.D.Ohio) ("OFIC adversary proceeding").

Appellee/Debtor Hughes–Bechtol, Inc. ("HBI"), entered into a number of construction contracts in which Appellant Ohio Farmers Insurance Company ("OFIC"), as surety, had posted performance and payment bonds. Appellee Society National Bank ("Society"), formerly known as Third National Bank and Trust Company, also had made various loans to HBI. On August 3, 1988, HBI filed a petition for bankruptcy, pursuant to Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Ohio, Bankr.No. 3–88–02492 (Bankr.S.D.Ohio).

On March 3, 1989, HBI initiated an adversary proceeding ("Newberg adversary proceeding"), *Hughes–Bechtol, Inc. v. Gust K. Newberg Construction, et al.*, Adv. No. 89–066 (Bankr.S.D.Ohio), naming Gust K. Newberg Company ("Newberg"), OFIC and Society as defendants. HBI alleged that Newberg owed it nearly $193,000, as a result of HBI's performance of its contracts with Newberg, and that Society and OFIC both claimed an interest in the proceeds from the Newberg projects. HBI sought a determination by the Bankruptcy Court as to which entity, Society or OFIC, was entitled to those proceeds. Of central concern was the effect of a cash collateral order,[1] which HBI, Society, and OFIC had entered into on September 1, 1988.

On March 13, 1989, OFIC initiated the OFIC adversary proceeding, seeking a determination of the ownership of contract funds due to HBI for ten construction projects on which OFIC had executed bonds, as surety, for HBI. Although many of the issues overlapped, neither party sought to consolidate the OFIC and Newberg adversary proceedings. However, to avoid duplicative litigation, the Bankruptcy Court requested that motions for summary judgment be filed in only one of the proceedings.

All three entities filed motions for summary judgment[2] in the OFIC adversary proceeding. On June 29, 1990, the Bankruptcy Court concluded that all funds which were due to HBI from the construction projects therein were property of the estate and that, under the cash collateral order, OFIC had deferred all of its otherwise available claims to the disputed funds until the entire indebtedness to Society had been paid.[3] *In the Matter of Hughes–Bechtol, Inc.*, 117 B.R. 890, 907 (Bankr.

1. The cash collateral order is Doc. # 48 in HBI's bankruptcy case, *In re Hughes–Bechtol, Inc.*, Case No. 88-02492 (Bankr.S.D.Ohio). (R. on Appeal, Doc. # 1)

2. The motions for summary judgment are contained in the Record on Appeal as Doc.

# 105 (OFIC), Doc. # 106 (HBI), and Doc. # 107 (Society).

3. The Bankruptcy Court's decision is contained in the Record on Appeal as Doc. # 132.

S.D.Ohio 1990). It further found that, under the doctrines of waiver and estoppel, OFIC was prevented from receiving any of the proceeds until the entire amount due to Society under the cash collateral order had been paid. *Id.* at 905. The Bankruptcy Court's construction of the cash collateral order was applied to the Newberg adversary proceeding, as well. OFIC sought leave to appeal the June 29, 1990, decision. This Court dismissed that motion, because it was not timely filed.[4]

On September 25, 1990, the Bankruptcy Court entered an order in the OFIC adversary proceeding, directing that the funds held in an escrow account previously established during that proceeding, including those paid into the account by Newberg, be disbursed to Society. On October 4, 1990, OFIC filed a Motion for Leave to Appeal and a Notice of Appeal of the September 25, 1990, order. This Court also dismissed that appeal, reasoning that the second motion for leave to appeal was nothing more than an attempt to resurrect the previously dismissed such motion. (*See* Doc. # 19, n. 2)

In March, 1991, the Bankruptcy Court directed the parties, in the Newberg adversary proceeding, to submit statements setting forth the issues which remained in that case. After the parties had filed those statements, the Bankruptcy Court, on April 25, 1991, concluded that no issues remained to be resolved and directed the clerk to close that adversary proceeding. On that date, the court entered its final order in the Newberg adversary proceeding. OFIC filed a notice of appeal on May 3, 1991.

On April 16, 1992, the Bankruptcy Court entered an Order, stating that there were no remaining issues in the OFIC adversary proceeding. On May 1, 1992, the Bankruptcy Court ordered that the OFIC adversary proceeding be closed. OFIC filed a notice of appeal on May 5, 1992.

On August 4, 1993, this Court entered its Decision,[5] later amended on August 9, 1993,[6] in the appeal of the Newberg adversary proceeding, in which it: 1) concluded that OFIC's appeal was timely; 2) upheld the Bankruptcy Court's determination that the Newberg funds were part of HBI's bankruptcy estate; 3) rejected the Bankruptcy Court's construction of the cash collateral order; 4) concluded that HBI was not precluded, under the principles of waiver and estoppel, from receiving proceeds until HBI's indebtedness to Society had been extinguished; and 5) remanded the action to the Bankruptcy Court for further proceedings. With regard to the cash collateral order, in particular, the Court stated that the Bankruptcy Court had considered paragraph 12 of the cash collateral order and Society's purpose for entering into the order, but had ignored the express language of paragraph 11, which clearly granted priority to OFIC for pre-petition accounts receivable. Furthermore, this Court stated that the Bankruptcy Court had "violated a fundamental principle governing the construction of consent decrees" by relying upon what it perceived to be Society's purpose in entering into the order. Thus, this Court concluded that, under the cash collateral order, OFIC was entitled to proceeds from pre-petition construction projects. However, because the Bankruptcy Court had not addressed whether the proceeds from the Newberg project were pre-petition accounts receivable, this Court remanded the case to that court to make such a determination.

On August 16, 1993, HBI and Society filed motions for rehearing (reconsideration) of this Court's decision in the Newberg adversary proceeding. In their mo-

---

4. *See Ohio Farmers Ins. Co. v. Hughes–Bechtol, Inc.,* Case No. MC–3–90–048 (S.D.Ohio), at Doc. # 17.

5. *Ohio Farmers Ins. Co. v. Hughes–Bechtol, Inc.,* No. C–3–91–230 (S.D.Ohio.) (Doc. # 23).

6. *Ohio Farmers Ins. Co. v. Hughes–Bechtol, Inc.,* No. C–3–91–230 (S.D.Ohio.) (Doc. # 25).

tions, HBI and Society argued that this Court's interpretation of the cash collateral order was incorrect. On August 27, 1993, this Court sustained, by notation order, a request by Society to stay briefing on the appeal of the OFIC adversary proceeding until the Court had resolved the Motions for Rehearing in the Newberg adversary proceeding. On March 28, 1994, this Court sustained HBI and Society's requests for a rehearing and set forth a briefing schedule for the filing of memoranda to aid the Court in resolving the substantive issue. On September 21, 1998, this Court overruled the Motions for Rehearing, stating that the Court's previously entered Judgment, finding that the Judgment of the Bankruptcy Court was affirmed in part and reversed in part and remanding the case to the Bankruptcy Court, remained in effect. The Court now addresses the merits of OFIC's appeal in the OFIC adversary proceeding, which challenges, in essence, the June 29, 1990, decision of the Bankruptcy Court.[7]

I. *Standard on Appeal*

■ The United States District Courts have jurisdiction over appeals from final judgments and final orders in a bankruptcy case pursuant to 28 U.S.C. § 158(a). Summary judgment, pursuant to Fed. R.Civ.P. 56, has been made applicable to bankruptcy adversary proceedings by Fed. R.Bankr.P. 7056. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For summary judgment to be granted, "the pleadings, interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law." *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1303 (6th Cir.1992). The underlying facts and any inferences which are drawn from such facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing the bankruptcy court's grant or denial of summary judgment, the district court, acting as an appellate court, reviews the bankruptcy court's conclusions of law *de novo*. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.)*, 106 F.3d 1255, 1259 (6th Cir.) (citing Bankr.R. 8013), *cert. denied*, 522 U.S. 816, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997); *Niecko*, 973 F.2d at 1303 (the review of denials of summary judgment is *de novo*).

II. *Analysis*

In its brief in support of its appeal (Doc. # 5), OFIC presents five issues. *First*, OFIC asserts that the Bankruptcy Court erred in determining that the funds for pre-petition work constitute property of the bankruptcy estate. *Second*, it claims that the Bankruptcy Court erred in its determination that, pursuant to the cash collateral order, OFIC's claims to receivables are subordinated to those of Society. *Third*, OFIC asserts that the Bankruptcy Court erred in its factual finding that waiver and estoppel bar OFIC's claims. *Fourth*, OFIC contends that the court made erroneous determinations regarding Society's willingness to loan funds post-petition and the effect of the post-petition financing by Society. *Finally*, OFIC asserts that the Bankruptcy Court erred by

---

7. In its June 29, 1990, decision, the Bankruptcy Court did not expressly articulate which aspect of each party's motion was sustained or overruled, nor did it specify which aspects of the decision the court entered declaratory judgment. However, it appears that the Bankruptcy Court sustained HBI and Society's Motions for Summary Judgment and overruled OFIC's Motion, as to whether the disputed funds were property of the bankruptcy estate, the interpretation of the cash collateral order, and the waiver and estoppel arguments. The court further appeared to overrule HBI and Society's Motions and sustain OFIC's Motion with regard to whether OFIC had violated the automatic stay.

failing to grant summary judgment in favor of OFIC.

## A. Property of the Bankruptcy Estate

*First,* OFIC contends that the Bankruptcy Court erred in its determination that all of the funds due from the construction contracts are property of HBI's bankruptcy estate. In its decision, the Bankruptcy Court noted the HBI held legal title to those funds, and that, under the Bankruptcy Code, legal title constitutes property of the bankruptcy estate. The court further found that it was undisputed that HBI alone supervised the assembly of labor and materials for those contracts, as well as the completion of the projects. The court thereby concluded that HBI had become entitled to the receipt of the unpaid progress payments and the retainage funds, subject to the claims of OFIC and Society. The court, thus, concluded that, as of the commencement of HBI's bankruptcy case, its estate included all unpaid funds due under the contracts, subject to the interests, whether legal or equitable, of HBI, Society, and OFIC.

In disputing this conclusion, OFIC argues that the funds in which HBI has "mere legal title" must be excluded from the bankruptcy estate and that it (OFIC) is entitled to them. In this regard, OFIC raises two concerns. *First,* OFIC claims that three pre-petition contracts contain "trust fund language", creating an express trust with HBI as trustee and the job creditors as beneficiaries. *Second,* as to the contracts not involving trust funds, OFIC asserts that it was entitled to receive retainage and contract funds held by general contractors and owners with whom HBI had contracted, to the extent those funds were earned by OFIC's payment of amounts for labor and material owed by HBI on those specific projects. OFIC asserts that, as a surety which has paid the job creditors, it is subrogated to the rights of the beneficiaries.

### 1. Trust Fund Contracts

The bankruptcy court's jurisdiction extends only as far as the debtor's property. *E.g., United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Marrs–Winn Co., Inc.,* 103 F.3d 584, 589 (7th Cir.1996). A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The estate also includes any interest in property which is acquired after the commencement of the case. 11 U.S.C. § 541(a)(7). However, the Bankruptcy Code places some limits on the estate, recognizing that the property of the bankruptcy estate does not include any interest in which the debtor holds only bare legal title. To that respect, 11 U.S.C. § 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). Accordingly, the Bankruptcy Code specifies that the debtor's bankruptcy estate does not include property held in trust for another. *In re Marrs–Winn Co., Inc.,* 103 F.3d at 589; *see Whiting Pools, Inc.,* 462 U.S. at 205, n. 10, 103 S.Ct. 2309; *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95 (3d Cir.1994) ("It is a well-settled principle that debtors do not own an equitable interest in property that they hold in trust for another, and thus, those trust funds are not 'property of the estate.' ") (citing *Begier v. I.R.S.,* [496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)] and *Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.,* 960 F.2d 366, 371 (3d Cir.1992)).

The nature and extent of a debtor's interest in property is determined by state law, with the estate having no greater

rights in property than those held by the debtor prior to bankruptcy. *E.g., In re Omegas Group, Inc.,* 16 F.3d 1443, 1450 (6th Cir.1994); *In re Coupon Clearing Serv., Inc.,* 113 F.3d 1091 (9th Cir.1997). Thus, in order to determine whether the funds owed to HBI are property of the bankruptcy estate, this Court must determine whether the contracts at issue provide that such funds are held in trust.

■■■ Under Ohio law, an express trust arises by a manifested intent, either written or oral, to create a trust. *Peterson v. Teodosio,* 34 Ohio St.2d 161, 172, 297 N.E.2d 113 (1973). There must be trust corpus, and there must be a fiduciary relationship between the trustee and the beneficiary. *In re Construction Alternatives, Inc.,* 2 F.3d 670, 677 (6th Cir.1993), *citing Brown v. Concerned Citizens for Sickle Cell Anemia, Inc.,* 56 Ohio St.2d 85, 382 N.E.2d 1155, 1158 (1978).

> It is a well-settled principle of law in [Ohio] and other jurisdictions that if one person pays money to another it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor, or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created. The intention of the parties will be ascertained by a consideration of their words and conduct in the light of surrounding circumstances.

*Federal Ins. Co. v. Fifth Third Bank,* 867 F.2d 330, 333 (6th Cir.1989), quoting *Guardian Trust Co. v. Kirby,* 50 Ohio App. 539, 543, 199 N.E. 81, 83 (Cuyahoga Cty. 1935); *Ulmer v. Fulton,* 129 Ohio St. 323, 339–40, 195 N.E. 557 (1935) (express trust requires an actual conveyance of property by a person capable of making such a transfer, for a definite term, vesting the legal title presently in a person capable of holding it for the benefit of another, or a retention of title by the owner under circumstances that clearly and unequivocally demonstrate the intent to hold the property for the use of another).

■■■ OFIC contends that three contracts, projects # 306, # 307, and # 319, provide that funds received by HBI are held in trust for the benefit of those who provide labor and materials, and that HBI has no equitable interest in those funds to the extent that it has not paid for same. OFIC points to Article 17(i) of these contracts, which provides, in pertinent part:

> All monies paid on account to any Contractor for materials or labor shall be regarded as fund [sic] in his trust for payment of any and all obligations relating to this Contract and no such amount of monies shall be permitted to accrue to the Contractor until all such obligations are satisfied. Evidence, satisfactory to the State, may be required to show that all current obligations relating to this work are satisfied before releasing any payment due on the work. Before payment of the final estimate, each Contractor shall file an Affidavit with the State, stating that monetary obligations relating to lienable items in connection with the work have been fulfilled.

(Summ.J. Pl.'s Ex. 58–60)

Although the Sixth Circuit has not addressed such language in the context of a bankruptcy action, it considered identical language in *Federal Insurance Co. v. Fifth Third Bank, supra; see also In re Marrs–Winn Co., Inc.,* 103 F.3d 584 (discussing *Fifth Third* regarding whether trust property is part of bankruptcy estate). In that case, Becker Electric Company ("Becker") entered into an agreement with the State of Ohio to perform work at the Chillicothe Correctional Institute. Under the terms of the agreement, the contractor was required to post a performance bond, which was provided by Federal Insurance Company ("Federal"), as surety. Section 17(i) of the contract further provided:

All monies paid on account to any Contractor for materials or labor shall be regarded as fund [sic] in his trust for payment of any and all obligations relating to this contract and no such amount of monies shall be permitted to accrue to the contractor until all such obligations are satisfied. Evidence satisfactory to the state may be required to show that all current obligations relating to this work are satisfied before releasing any payment due on the work. Before payment of the final estimate, each contractor shall file an affidavit with the state, stating that monetary obligations [sic] relating to lienable items in connection with the work have been fulfilled.

Under the contract, the State made two progress payments to Becker. Becker subsequently ceased operations. Federal, as surety, was given notice by the State to complete Becker's contractual obligations to the State. Federal completed Becker's contract, sustaining a net loss of $1,100,-000.

At the time of entering into the contract with the State of Ohio, Becker also had outstanding loans owing to Fifth Third Bank. Seeking repayment of its loans, Fifth Third seized approximately twelve of Becker's deposits and applied them as payments against Becker's debt. These deposits included the two progress payments by the State of Ohio. Federal brought suit against Fifth Third Bank, seeking to recover the amounts of the two progress payments.

In concluding that the contract created an express trust, with the State of Ohio as settlor and Becker as trustee, the Sixth Circuit began by noting that the State, as owner of the Chillicothe project, had an interest in insuring that job creditors were paid so that the project would proceed uninterrupted.

In contrast to the "typical" cases cited, [where the owner pays progress payments to a contractor unencumbered by a trust], the parties here have included the contract provision which refers to

Becker's holding the payments "in trust." The State knew that progress payments that it would make to Becker would represent amounts Becker would owe to laborers, material men, and subcontractors. The State asked, and Becker agreed, to hold the progress payments in trust for the job creditors. The State apparently gave the job creditors this interest in the progress payments to protect the State's interest in having the project expeditiously completed. Although the State also required a bond to protect itself in the event of a default by Becker on the entire project, the requirement of the "trust," by which Becker had to first pay job contractors out of money received, also furthered the State's interests by deterring any work stoppages by unpaid job creditors. The contract provision also demonstrates that the State intended to impose enforceable duties upon Becker, and this factor also tends toward the conclusion that a trust was formed. The State mandated that it could withhold further payments to Becker if Becker did not satisfy all "current obligations" relating to the work. The posting of the performance bond by Becker was another enforceable duty to protect the interests of the State and the job creditors.

867 F.2d at 334. The Sixth Circuit rejected Fifth Third's argument that the contract provision created a debt, stating that the plain language of the contract did not give Becker unrestricted use of the money but, rather, required Becker to use the progress payments to pay obligations, prior to a benefit accruing to Becker. Furthermore, the court dismissed the argument that no trust was created, because the contract did not require Becker to hold the money in a separate account. Rather, the Sixth Circuit stated that the absence of such a requirement was not a determining factor. Accordingly, the Sixth Circuit held that the contract provision created an express trust with the State of Ohio as set-

tlor, Becker as trustee, and the job creditors as beneficiaries.

In the instant case, the contracts between HBI and the State of Ohio contain language[8] virtually identical to that presented in *Fifth Third.* Article 17(i) of the contracts for projects # 306, # 307, and # 319 similarly states that HBI will hold the funds in trust, and that HBI is required to pay the obligations on the contract prior to obtaining an interest in the remaining funds. Therefore, as with the contract provision in *Fifth Third,* the contracts between HBI and the State of Ohio for projects # 306, # 307, and # 319 (Warren Correctional Institute, Ambulatory Care Center, and Same Day Surgery Center), provide a clear manifestation of the State's intent to create an express trust, in which the State is settlor, HBI is trustee, and the job creditors are beneficiaries. Accordingly, HBI had mere legal title to the funds it held, which were to be used to pay obligations to job creditors. Such funds, therefore, are not property of HBI's bankruptcy estate.

HBI asserts that *Fifth Third* should not be applied in the context of a bankruptcy proceeding. It points to *In re Wm. Cargile Contractor, Inc.,* 151 B.R. 854 (Bankr. S.D.Ohio 1993), and *In re Construction Alternatives, Inc.,* 2 F.3d 670 (6th Cir. 1993). Neither case is dispositive of this issue.

In *Construction Alternatives, Inc., supra,* a contractor entered into an agreement with a school district to remove asbestos. To secure the contract, the contractor obtained a surety bond to assure its performance and its payment to the subcontractors, suppliers, and laborers that provided material and labor to the project. *Id.* at 673. At the time that the contractor completed performance and was due to receive its final progress payment, it had not paid all of its obligations arising from the project. The surety paid those subcontractors, suppliers or laborers who had not received payment. The contractor subsequently filed a petition for bankruptcy. The surety asserted a claim against the final payment, stating, *inter alia,* that the contractor held the funds in trust for the surety's benefit.

■ In claiming the funds, the surety contended that the suretyship agreement created an express trust with the final payment as the trust corpus.[9] The Sixth Circuit, in holding that no express trust was created, stated that the agreement did not require that the progress payments be kept in a separate fund, nor was there evidence that the contractor had done so. The court thereby concluded that there was no trust corpus and, thus, no trust. Although the Sixth Circuit found that the language of the contract in *Construction Alternatives* did not create an express trust, it had previously found, in *Fifth–Third,* that the exact language at issue in the contracts submitted by OFIC did create such a trust. This Court recognizes that *Construction Alternatives* and *Fifth Third,* as applied to the facts presented in those cases, appear to contradict each other directly as to the requirements for the creation of an express trust. However, because one panel of the Sixth Circuit may

---

**8.** There are a few differences. The contracts between HBI and the State of Ohio capitalize certain words that are lower-case in the Becker contract, and the HBI contracts have corrected the typographical errors noted in the Becker contract.

**9.** The agreement stated, in pertinent part:
[I]t is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the [contractor] or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have to sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.
2 F.3d at 676, n. 4.

not reverse another, *Salmi v. Secretary of Health and Human Services,* 774 F.2d 685, 689 (6th Cir.1985), and because *Fifth Third* interprets, at length, the exact contractual provision at issue in this case, this Court feels constrained to apply the reasoning set forth in that case. Accordingly, this Court concludes that *Construction Alternatives* is not determinative as to whether *Fifth–Third* should be applied to the present concern.

Similarly, this Court does not find *In re Wm. Cargile Contractor, Inc., supra,* to be dispositive of this case. In *Cargile,* the bankruptcy court declined to follow *Fifth Third,* stating that *Fifth Third* did not involve prioritizing claims within a bankruptcy context and that the Sixth Circuit, therein, did not refer to the priority status of the subcontractors apart from their status as trust beneficiaries. The court, therefore, concluded "it would unsound to apply *Fifth Third* in a context where the would-be beneficiaries are unsecured creditors." 151 B.R. at 860. The bankruptcy court's conclusion, however, disregards the principle that the debtor's bankruptcy estate extends only as far as the debtor's property. To disregard trust principles, due to the priority status of the trust beneficiary, would give the bankruptcy trustee greater rights, vis-à-vis the trust beneficiaries, than the debtor himself would have, *i.e.,* the bankruptcy trustee would be able to infringe on the rights of the beneficiaries when, outside of the bankruptcy context, the debtor would not be able to do so. This Court therefore disagrees with the *Cargile* court's determination that *Fifth Third* should not apply in the bankruptcy context. Accordingly, as did the Sixth Circuit in *Fifth Third,* this Court concludes that the language in the contracts for projects # 306, # 307, and # 319 provides that funds received by HBI are held in trust for the benefit of those who provide labor and materials. HBI has no equitable interest in those funds to the extent that it has not paid for same.

In its brief, HBI argues that OFIC is attempting to veil a constructive trust argument, thus improving its position vis-à-vis other creditors, in violation of the Bankruptcy Code. A constructive trust is not actually a trust, but rather a common-law remedy, developed in equity, for unjust enrichment. *In re McCafferty,* 96 F.3d 192, 196 (6th Cir.1996). In *In re Omegas Group,* 16 F.3d 1443, 1449 (6th Cir.1994), the Sixth Circuit recognized that bankruptcy courts should be reluctant to impose constructive trusts, because they thwart the policy of ratable distribution. *Id.* at 1451. In the instant case, the bankruptcy court would not be imposing a constructive trust for the benefit of OFIC. Rather, the court would be enforcing the express language of the agreement between the State of Ohio and HBI, which established an express trust, in the res of which HBI would have no equitable interest. Furthermore, the Supreme Court has noted that the policy of ratable distribution would be irrelevant where the property at issue was not subject to distribution to creditors. *Begier,* 496 U.S. at 58, 110 S.Ct. 2258. Thus, this Court does not find HBI's argument to be meritorious. Accordingly, this Court concludes that the funds due to HBI, pursuant to the contracts between HBI and the State of Ohio for projects # 306, # 307, and # 319 (Warren Correctional Institute, Ambulatory Care Center, and Same Day Surgery Center), which are held in trust by HBI for the benefit of job creditors, are not property of HBI's bankruptcy estate. The Bankruptcy Court's conclusion with regard to those funds is hereby reversed.

### 2. *Non–Trust Fund Contracts*

Next, OFIC asserts that it is entitled, to the extent that it paid for labor and materials on bonded contracts, to the funds to be paid by the owner or obligee to HBI on those contracts. In order for OFIC to prevail on this argument, it is necessary for those funds to be excluded from HBI's bankruptcy estate. For this to occur, the Court must determine, as a

matter of law, that HBI had not been entitled to the receipt of progress payments and the retainage funds.

In determining whether a contractor becomes entitled to the unpaid funds due under a contract, courts have carefully identified whether the contractor had satisfied the terms of its contract, entitling it to receive unpaid funds. *E.g., In re Construction Alternatives, Inc.,* 2 F.3d 670 (6th Cir.1993); *In re Wm. Cargile Contractor, Inc.,* 203 B.R. 644 (Bankr.S.D.Ohio 1996) (*"Cargile II"*); *In re Design Internat'l Ohio Corp.,* No. 1–92–00642, 1994 WL 912422 (Bankr.S.D.Ohio Sept.14, 1994). Of particular significance, courts have identified whether the contract provided for the owner to retain a percentage of each progress payment to insure payment of suppliers or subcontractors. *Id.*

> Where a surety fulfills the terms of its bond and completes a construction project by paying debts of a contractor, the surety acquires an equitable right to be paid funds retained by the owner until the condition is satisfied that all "bills for materials, supplies and equipment" have been paid or otherwise satisfied.

1994 WL 912422 at *4 (citing *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 138–39, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)). By subrogating to the rights of the owner, the retained funds become the property of the surety outside of the bankruptcy process. *See Pearlman,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190.

To illustrate, in *Construction Alternatives, Inc., supra,* the Sixth Circuit concluded that a contractor had earned the right to receive its final progress payment when the work on the project was complete at the time that the contractor petitioned for bankruptcy. Although there were still several bookkeeping and administrative matters to be completed and several subcontractors to be paid, there was no provision in the contract between the parties allowing the owner to retain a portion of the progress payments to insure payment of unpaid suppliers and subcontractors. Thus, having satisfied its obligations to the owner, the contractor was entitled to the final payment and those funds became part of the contractor's bankruptcy estate.

Similarly, in *Cargile II,* the bankruptcy court determined that a final progress payment was property of the bankruptcy estate when the work on the contract was complete and virtually all the subcontractors had been paid. 203 B.R. at 646. It was irrelevant that the subcontractors had been paid by the surety, pursuant to its bond obligations. *Id.* The court distinguished this decision from that in *In re Design International Ohio Corp., supra,* in which the same court concluded that the bonding company was entitled to receive the final payment from the owner. In doing so, the court noted that the *Design International* contractor had not paid "all bills for materials and supplies" and, of greater importance, that the *Design International* contract provided for a retainage. *Id.*

■ In the instant case, the bankruptcy court stated: "[I]t is undisputed that only HBI, both prepetition and postpetition, supervised the assembly of labor and materials and the completion of the projections...."[10] Based on those facts, the bankruptcy court determined that HBI thereby became entitled to the receipt of the unpaid progress payments and the retainage funds, subject to the claims of OFIC and Society. Once HBI completed its contractual obligations, it was entitled to receive progress payments and retainages pursuant to those contracts. Unquestionably, the right to receive payment pursuant to a contract is a legal and equitable interest in property, and, thus, property of the bankruptcy estate. The Bankruptcy Court's conclusion that these funds are property of HBI's bankruptcy estate is, therefore, affirmed.

---

**10.** None of the parties argues that a question of fact exists regarding HBI's conduct.

### B. Subordination of OFIC's Rights under the Cash Collateral Order

■ OFIC asserts that the Bankruptcy Court erred in its interpretation of the cash collateral order, in which it determined that OFIC had subordinated its rights to pre-petition accounts receivables until all the indebtedness to Society had been paid. OFIC raised this same issue in its appeal of the Newberg adversary proceeding. On August 4, 1993, this Court determined that the Bankruptcy Court had erred in construing the cash collateral order such that Society had priority to all accounts receivables until its indebtedness had been paid. Rather, this Court concluded that the order unambiguously acknowledged that OFIC retained its priority as to all pre-petition accounts receivables. Upon reexamination of that conclusion, this Court again has held that the cash collateral order reaffirmed OFIC's priority rights to pre-petition proceeds. That decision resolves the present issue. Accordingly, this Court incorporates that reasoning into this decision.

As with the Newberg project funds, the Bankruptcy Court did not address whether the proceeds from the projects at issue in the OFIC adversary proceeding were pre-petition accounts receivable, and this Court may not, in the first instance, make factual findings. Accordingly, this Court must remand this case to the Bankruptcy Court to allow it to make such determinations. The Bankruptcy Court's interpretation of the cash collateral order is reversed, and the case is remanded to that court for it to make determinations consistent with this decision.

### C. Waiver and Estoppel

■ Next, OFIC argues that the Bankruptcy Court erred in concluding that waiver and estoppel bar its claims. As an alternative holding to its conclusion that the cash collateral order provided Society priority to all proceeds, until the entire indebtedness to Society under that order was extinguished, the Bankruptcy Court concluded that principles of waiver and estoppel prevent OFIC from receiving any of those proceeds. As with OFIC's argument regarding the interpretation of the cash collateral order, this issue was previously raised in the appeal of the Newberg adversary proceeding.

In rejecting HBI and Society's waiver and estoppel arguments in the Newberg adversary proceeding, this Court stated:

> If this Court accepted the Bankruptcy Court's construction of the [cash collateral] order, it would agree with th[e] conclusion [that OFIC had waived or was estopped from asserting any claim to accounts receivable by entering into that agreement]; however, this Court has concluded that the order can only be read as providing that OFIC has priority to pre-petition accounts receivable. Therefore, the Bankruptcy Court's conclusion regarding waiver and estoppel cannot stand. Simply stated, it would be incongruous to conclude that a party (OFIC) waived or is estopped from asserting a claim to receivables because it entered into an agreement (the cash collateral order) which provides that it has the predominate right to a portion of those receivables.

*Ohio Farmers Ins. Co. v. Hughes–Bechtol, Inc.,* No. C–3–91–230, 1993 WL 1367351 (S.D.Ohio.1993) (Doc. # 23, at 26–27) As with the cash collateral order, this Decision and Entry in the appeal of the Newberg adversary proceeding (Doc. # 23, as amended in Doc. # 25) addresses and resolves the issue presented in OFIC's third assignment of error. Accordingly, this Court adopts and incorporates its reasoning in the Newberg adversary proceeding into this decision. The Bankruptcy Court's conclusion that OFIC was precluded, under the principles of waiver and estoppel, from receiving proceeds until HBI's indebtedness to Society had been paid is reversed.

### D. Factual Determinations

OFIC's fourth assignment of error contends that the Bankruptcy Court erred

in making factual determinations regarding Society's willingness to loan funds post-petition and the effect of post-petition financing by Society.[11] OFIC argues that these factual findings are erroneous, because the Bankruptcy Court's interpretation of the cash collateral order was incorrect. Specifically, it argues that paragraphs 11 and 13 of the cash collateral order clearly indicate that Society's post-petition financing was not based only upon the requirement that it receive all proceeds on any projects where funds remained unpaid. Rather, OFIC states that the cash collateral order indicates that Society agreed to advance funding with the assurance that it would receive monies from HBI jobs that were earned by HBI's work after the bankruptcy filing occurred. Although OFIC asserts that it is contesting the Bankruptcy Court's factual findings, it is, in reality, disputing that court's interpretation of the cash collateral order. Having previously addressed the Bankruptcy Court's interpretation of that order and determined that its construction of the order was erroneous, OFIC's fourth assignment of error is moot.

E. *Failure to Grant Summary Judgment in Favor of OFIC*

Finally, OFIC asserts that the Bankruptcy Court erred in denying its motion for summary judgment. Although this Court has determined that the Bankruptcy Court erred in its determination that all the disputed property is property of the bankruptcy estate and in its interpretation of the cash collateral order, there are factual issues remaining as to what amount of the disputed funds are properly excluded

from HBI's bankruptcy estate as trust funds and what portion of the bankruptcy estate are prepetition proceeds, to which OFIC has priority under the cash collateral order. Accordingly, although this Court must reverse the Bankruptcy Court's award of summary judgment to Society and HBI to the extent indicated in this Decision, this Court may not award summary judgment, in part, to OFIC as to those portions of the Decision.

WHEREFORE, based upon the aforesaid, this Court concludes that the Bankruptcy Court erroneously concluded that the funds held by HBI, in trust, for projects # 306, # 307, and # 319 are property of the bankruptcy estate; that the cash collateral order gave Society priority to all the proceeds in dispute, and that OFIC is precluded, under waiver and estoppel, from receiving any proceeds until the entire indebtedness to Society under the cash collateral order was extinguished. However, the Bankruptcy Court's determination that the proceeds from contracts other than for projects # 306, # 307, and # 319, are property of the bankruptcy estate is affirmed. This case must be remanded to the Bankruptcy Court for a determination of the amount of trust funds at issue and which funds constitute prepetition proceeds under the cash collateral order. Accordingly, the Decision and Order of the United States Bankruptcy Court for the Southern District of Ohio, Entering Declaratory Judgment and Granting in Part and Denying in Part Motions for Summary Judgment, is hereby Affirmed in Part, Reversed In Part, and Remanded to the Bankruptcy Court. Judgment will be entered accordingly.

---

**11.** Although not specifically referenced in its brief (Doc. # 5), OFIC implies, by its assignment of error, that it contests two of the court's specific factual findings, to wit:
(11) **Postpetition,** Society was unwilling to loan any funds to HBI unless Society would obtain the first priority position in all funds due HBI involving the other defendants.
(12) **Postpetition,** HBI was unable to obtain funding for its continuing operation;

however, as a result of an agreement reached between Society, OFIC, and HBI, Society provided postpetition financing to HBI, which allowed HBI to complete the projects, without any postpetition default under any of OFIC's payment or performance bonds on projects involving the other defendants.
117 B.R. at 894 (emphasis in original).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.